x669p-ai

Marcia M. Meade
1304 W Dean St
Spokane, WA 99201
509.328.4266

UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF WASHINGTON

(Spokane)

| | |
|---|---|
| *In Re the Bankruptcy of* : | NO. 19-01326-FPCZ |
| Michael Ray Alexander and Rochelle Annette Alexander, : | DECLARATION OF MARCIA M. MEADE RE: INSURANCE |
| : | |

I, Marcia M. Meade, do state and declare under the penalty of perjury and the laws of

the state of Washington as follows:

1. I was lead Counsel for Plaintiff in Spokane County Cause No. 17-201352-2 *Alexander v. Providence Health & Services, et al* (Herein "Lawsuit") and testifying matters of my own personal professional knowledge.

2. The issue of Rochelle Alexander's insurance coverage and the assertion of a lien through The Rawlings Company on behalf of Regency Blue Cross Insurance Company, who administered the insurance coverage for the state of Washington was an issue. In 2017, Regency Blue Cross Insurance Company was given notice of the pending lawsuit, along with a request to identify any potential subrogation claim. Thereafter notice was given that The Rawlings Company was handling the potential subrogation.

DECLARATION OF MARCIA M. MEADE ON UNPAID
EXPERT WITNESS FEES IN HEALTH CARE
NEGLIGENCE ACTION    Page 1 of 9

3. Over the years, my office collected Rochelle Alexander's health care bills, Explanation of Benefits (EOB) and regularly communicated with The Rawlings Company claims adjuster assigned to the matter. Through out that time, I did periodically identify many health care cost that were not related to the claim. Over time The Rawlings Company identified the ever increasing amount of alleged subrogation.

4. Up until and after the bankruptcy herein, I endeavored to have a "good", "straight forward" and "responsive" relationship with Brandon Fleur, who was the assigned claims adjuster from The Rawlings Company. Further, as the case worked towards trial, I did seek and have discussions with the assigned Rawlings Company attorney.

5. At the time that the bankruptcy was filed herein, the potential subrogation amount was approximately $483,000.00. I did provide Lisa McBride with the specific figure before the bankruptcy was filed on May 17, 2019.

6. Pursuant to the insurance contract obligations that Ms. Alexander had, I did provide notice to The Rawlings Company that a Chapter 7 bankruptcy had been filed. At that time, I had provided the contract information for Trustee Munding to the The Rawlings Company. Previously, and again I did provide Mr. Vovos and Trustee Munding he contact data for Brandon Fluer at the Rawlings Company.

7. Despite providing the contract information neither Trustee Munding nor Mr. Vovos confirmed either way whether they had made direct contract with Mr. Fleur. It was also obvious to me that neither Trustee Munding nor Mr. Vovos was taking any steps whatsoever to protect Rochelle Alexander, so there was no breach by her of the Regency Blue Cross Insurance Contract. Keeping her health insurance in place was a valuable and

DECLARATION OF MARCIA M. MEADE ON UNPAID
EXPERT WITNESS FEES IN HEALTH CARE
NEGLIGENCE ACTION    Page 2 of 9

DAWSON MEADE, PS
1304 W. Dean
SPOKANE, WASHINGTON 99201-2015
(509) 328-4266

x669p-ai

1    critical right as to Ms. Alexander. Therefore, I continued as before with my good, straight

2    forward and responsive relationship with Mr. Fleur.

3   **8**. After the bankruptcy was filed, I did continue to provide Mr. Fleur with medical records

4    and other documentations that several of the items on his list of potential subrogation were

5    not related to the Lawsuit. As Ms. Alexander's attorney it was deeply disturbing that on

6

7    this vital and critical matter of her health insurance it was a *black hole* as to Trustee

8    Munding.

9   **9**. Exhibit E is a true and correct copy of the August 23, 2019, letter that I received from a

10    more senior Rawlings' attorney than the attorney I had previously communicated. This

11    letter was provided to Trustee Munding and Mr. Vovos.

12

13   **10**. There are valid legal arguments, supported by facts and law, along with the potential

14    trends in the law, which I professionally believe mitigate the points raised in L. Taylor

15    Smith's August 23, 2019, letter on behalf of The Rawlings Company (Exhibit E). Since I

16    was neither provided what was submitted to Gary N. Bloom nor a detailed report of what

17    occurred in the mediation, it is unclear whether such was utilized to maximize the

18    settlement amount and post bankruptcy insurance coverage. Asserting that the

19

20    subrogation was reduced to an amount of $10,000.00, does not address a myriad of other

21    related matters as to Defendant MacFarlane and post bankruptcy health insurance. This is

22    why Ms. Alexander needed to have actually independent legal Counsel at the mediation,

23    and as to her consideration of whether the proposed settlement either is reasonable or in

24    her best interest.

25   **11**. After the bankruptcy was filed Rochelle Alexander had approximately another

26    $120,000.00 in health care provided. Post bankruptcy filing Ms. Alexander had two brain

27

28 DECLARATION OF MARCIA M. MEADE ON UNPAID
    EXPERT WITNESS FEES IN HEALTH CARE
29 NEGLIGENCE ACTION    Page 3 of 9

DAWSON MEADE, PS
1304 W. Dean
SPOKANE, WASHINGTON 99201-2015
(509) 328-4266

1    and spinal surgeries, was admitted to the ICU twice and another hospitalization not in the

2    ICU. She had multiple medical test and physician office visits for the condition of Chiari

3    Malformation Type 1. She was also undergoing chemotherapy treatment for her non-

4    related chronic Breast Cancer condition.

5    12. It continued to be obvious to me that neither Trustee Munding and Mr. Vovos were taking

6    any steps whatsoever to confirm that Ms. Alexander was not breaching her insurance

7    contact. Under that contract Ms. Alexander had an affirmative duty (cooperation contract

8    obligations as to third-party recovery) to notify the potential "third-party responsible

9    parties", *i.e.* the Defendants of the Lawsuit, of the "amount" of the potential subrogation

10   claim. Trustee Munding and Mr. Vovos were neither confirming to Ms. Alexander or me

11   that they were taking the necessary steps to protect her health insurance contract rights.

12   

13   13. Exhibit F is a true and correct copy of the October 23, 2019, letter from the Rawlings

14   Company, which was giving notice that the potential subrogation lien was at that time

15   $682,763.84. This letter accompanied a 156 page individualized summary of all the

16   asserted related individual subrogated amounts.

17   

18   14. Given the Trustee Munding's *black hole* approach, and Mr. Vovos' inability to tell me

19   one way or another, what was happening, I did take what I professionally believed the

20   necessary steps were to protect Rochelle Alexander's on-going insurance contract rights.

21   A copy of Exhibit F along with the 156 page summary of individual potential subrogated

22   amounts was provided to all the Defense Counsel of the Lawsuit.

23   

24   15. Thereafter Trustee Munding, inappropriately requested my private Chapter 11 attorney

25   (Dan O'Rourke) to control me as to this bankruptcy herein. Exhibit G is a true and correct

26   copy of the letter that Trustee Munding sent to my personal attorney, Dan O'Rourke.

27   

DECLARATION OF MARCIA M. MEADE ON UNPAID
EXPERT WITNESS FEES IN HEALTH CARE
NEGLIGENCE ACTION    Page 4 of 9

DAWSON MEADE, PS
1304 W. Dean
SPOKANE, WASHINGTON 99201-2015
(509) 328-4266

**16.** Trustee Munding was tacitly opining that Ms. Alexander as a debtor allegedly had no RCW 7.07.090 rights. RCW 7.07.090 recognized the valuable right of every participant in a medication; it states:

> RCW 7.07.090 **Participation in mediation.**
> An attorney or other individual designated by a party may accompany the party to and participate in a mediation, except that if the dispute being mediated is the subject of pending proceedings under chapter 12.40 RCW, then a party may not be represented by an attorney in mediation unless the party may be represented by an attorney in the proceedings under chapter 12.40 RCW. A waiver of participation given before the mediation may be rescinded.

**17.** Thereafter, I provided multiple detailed as to facts and legal concepts to Trustee Munding with copies to Mr. Vovos and Ms. McBride. Those letters addressed the matters that I believed were vital to protecting Ms. Alexander's rights, including her insurance contract rights. Mr. Munding continued with what I believe was unprofessional *black hole* tactics, *i.e.* no response. Mr. Vovos continued with his position that he was sorry but the directions from his client Trustee Munding was to decline communicating with me.

**18.** I did also take the step making multiple efforts to contact Gary W. Dyer, assistant Bankruptcy Trustee. Mr. Dyer's schedule eventually opened up so he could speak with me. In that conversation I explained my professional concerns about protecting Rochelle Alexander's on-going insurance contract rights, the fact of the post-filing $120,000.00 plus health insurance cost that were related to the asset Lawsuit. For Mr. Dyer, I did identify similar questions that had previously been addressed in writing to Trustee Munding, and by copy to Ms. McBride and Mr. Vovos. Further, I addressed with Mr. Dyer my serious professional concerns about Ms. Alexander being required to sign any CR 2A Stipulation in a mediation. Mr. Dyer advised me that he did not think Trustee

DECLARATION OF MARCIA M. MEADE ON UNPAID
EXPERT WITNESS FEES IN HEALTH CARE
NEGLIGENCE ACTION    Page 5 of 9

DAWSON MEADE, PS
1304 W. Dean
SPOKANE, WASHINGTON 99201-2015
(509) 328-4266

Munding would have Ms. Alexander sign a 2A Stipulation because only the Court could determine whether a proposed settlement was reasonable.

19. A request is being made to have the letters sent to Trustee Munding on the insurance matters and the CR 2A Stipulation be sealed. In that letter, there are matters that have my legal mental impressions, which are subject to attorney work product privilege and attorney client privilege as well as Fed.R.Evid. 408 and Wash. Evid. Rule 408.

20. Before the December 10, 2019, Mediation Trustee Munding refused to provide me as Rochelle Alexander copies of any of the mediation statements or even a summary of what was proposed. After the mediation Trustee Munding, and Mr. Vovos at Trustee Munding's directions refused to provide me with any information including most importantly the CR 2A Stipulation.

21. As pointed out in the Objection to the Proposed Settlement the medication CR 2A Stipulations, if it seeks represent the settlement with Rawlings Company, there are serious concerns that Rochelle Alexander's post bankruptcy insurance contract rights are without any meaningful protection, or "savings of those rights". Further, there has been zero information or proof that the Rawlings Company has any authority to bind Regency Blue Cross as to post-bankruptcy coverage rights.

22. There are other problems with the same CR 2A Stipulation as to multiple, potential, evidence issues as well as law that applies to RCW 4.22.060, and the legal consequences captured in *Glover v. Tacoma General Hosp.*, 98 Wn.2d 708, 658 P.2d 1230 (1983). If actual independent Counsel was present, the CR 2A Stipulation would have been edited and protective wording would have been injected.

DECLARATION OF MARCIA M. MEADE ON UNPAID
EXPERT WITNESS FEES IN HEALTH CARE
NEGLIGENCE ACTION    Page 6 of 9

DAWSON MEADE, PS
1304 W. Dean
SPOKANE, WASHINGTON 99201-2015
(509) 328-4266

23. Over the decades, I have engaged in multiple mediations with CR 2A Stipulations. These stipulations are a "negotiated" document, which require detailed and specific attention to protect the rights of one's clients. Unless a party's independent Counsel insist the wording will not spontaneous appear in the document. For the Mediator a party's counsel can seem annoying at the end of day of mediation as to the CR 2A Stipulation, nevertheless it is a party's independent Counsel's obligation to protect the client.

24. For the record, without disclosing mental impressions the CR 2A Stipulation and any settlement documents, *i.e.* Releases and Settlement Agreements, in light of RCW 7.70.080 (Evidence as to insurance in health care negligence actions) along with the proposal that Michelle Hansen, MD be dismissed from the suit are very problematic. There seems to be zero considerations of the future evidentiary consequences. There certainly appears to be no consideration of the warnings that I provided to Trustee Munding and by copy to Mr. Vovos and Ms. McBride.

25. What presently exist in the proposed Settlement Agreement as to the failure to address in a prudent manner the health insurance of Rochelle Alexander. Most certainly the amount allocated to Mrs. and Mr. Alexander will not come close to covering out of pocket health care expenses, should what I forecasted in my letter to Trustee Munding occurs. This is on top of the fact that Mrs. and Mr. Alexander cannot file for bankruptcy for another ten (10) years.

26. Mrs. Alexander has expressed the belief that Trustee Munding and Gary N. Bloom are looking after her best interest. I am presuming that Mrs. Alexander is recalling what I explained as to Mr. Vovos, as the attorney for the Trustee Munding, is no longer her attorney, hence he is prohibited from acting exclusively for her.

DECLARATION OF MARCIA M. MEADE ON UNPAID
EXPERT WITNESS FEES IN HEALTH CARE
NEGLIGENCE ACTION    Page 7 of 9

DAWSON MEADE, PS
1304 W. Dean
SPOKANE, WASHINGTON 99201-2015
(509) 328-4266

27. Knowing Mr. Vovos I do not believe he did anything to mislead Mrs. Alexander into believing he was representing her. She knew he was no longer representing her. Knowing how Mr. Bloom zealously guards his mediator status, I doubt that he directly told Ms. Alexander that he was acting independently for her. On the other hand, Ms. Alexander was misled in believing that Trustee Munding was "looking after her", her quote not mine.

28. These matters, herein, are real life risk for Mrs. Alexander. It is easy to flash money and the end of the Lawsuit litigation in front of the mentally fragile Mrs. Alexander. Of course in her heart, she would like for it to be over. The real life risk to her is how it is occurring as to her post bankruptcy health care and the future. In what is a clear liability case the proposed settlement is utterly inadequate to cover her past losses and the long term risk that she alone will face economically and contractually as to her health insurance.

DATED this 14th day of February 2020.

Marcia M. Meade, WSBA # 11122

DECLARATION OF MARCIA M. MEADE ON UNPAID
EXPERT WITNESS FEES IN HEALTH CARE
NEGLIGENCE ACTION     Page 8 of 9

DAWSON MEADE, PS
1304 W. Dean
SPOKANE, WASHINGTON 99201-2015
(509) 328-4266

CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of February, 2020, I caused a true and correct copy of the Declaration of Marcia M. Meade Re: Insurance to be served as indicated below.

John Munding                                    [ x ]   U.S. Mail
9425 N Nevada St Ste 212                         [   ]   Hand Delivery
Spokane, WA 99218-1286                           [ x ]   And Supplemental Email
John@Mundinglaw.com                              [   ]   And Supplemental Fax

Mark E. Vovos                                    [...]   U.S. Mail
Law Office of Mark E. Vovos                      [ x ]   Hand Delivery
1304 W Dean                                      [ x ]   And Supplemental Email
Spokane, WA 99201                                [   ]   And Supplemental Fax
mvovos@mvovos.digitalspacemail8.net

Elizabeth M. McBride                             [ x ]   U.S. Mail
Attorney at Law                                  [   ]   Hand Delivery
28 W. Indiana, Ste. G                            [ x ]   And Supplemental Email
Spokane, WA  99205                               [   ]   And Supplemental Fax
lisa@lisamcbride.com

Rochelle and Michael Alexander                   [ x ]   U.S. Mail
c/o Elizabeth M. McBride                         [   ]   Hand Delivery
Attorney at Law                                  [ x ]   And Supplemental Email
28 W. Indiana, Ste. G                            [   ]   And Supplemental Fax
Spokane, WA  99205
lisa@lisamcbride.com

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this 14th day of February 2020, at Spokane, Washington.

Marcia M Meade

DECLARATION OF MARCIA M. MEADE ON UNPAID
EXPERT WITNESS FEES IN HEALTH CARE
NEGLIGENCE ACTION     Page 9 of 9

DAWSON MEADE, PS
1304 W. Dean
SPOKANE, WASHINGTON 99201-2015
(509) 328-4266

# EXHIBIT E

EXHIBIT E

**Rawlings&Associates** PLLC

Offices In:
LaGrange, Kentucky
Florence, Kentucky
Los Angeles, California

Post Office Box 49
LaGrange, Kentucky 40031-0049

One Eden Parkway
LaGrange, Kentucky 40031-8100
Phone: (502) 587-1279

August 23, 2019

Marcia M. Meade, Esq
Dawson & Meade, P.S.
1304 West Dean St
Spokane, WA 99201
*Counsel for Plaintiff Rochelle Alexander*

|         |                     |                                        |
| ------- | ------------------- | -------------------------------------- |
| Re:     | Our Client:         | **Uniform Medical Group**              |
|         | Member/Patient:     | **Michael Alexander/Rochelle Alexander** |
|         | Date of Incident:   | **04/18/2014**                         |
|         | Our Reference No.:  | **87229480**                           |
|         | Your Client:        | **Rochelle Alexander**                 |

Dear Ms. Meade,

The Rawlings Company represents Regence BlueShield ("Regence") as the claims administrator for the Uniform Medical Group self-funded health plan offered through the Washington State Health Care Authority's Public Employees Benefits Board Program. This health plan provided health benefits to the Plaintiff / Debtor, Rochelle Alexander, who is enrolled in this self-funded medical benefits plan (the "Plan"). Regence serves as the third-party claims administrator for the Plan.

I am writing in response to your emails dated July 22, 2019, and June 7, 2019, in which you advised that your client has filed a Chapter 7 bankruptcy petition. It is my understanding that your client's medical negligence tort claim is ongoing and that your client has not reached a settlement or obtained any recovery to date from the tortfeasor(s).

The health plan's claim in this matter is based on its contractual subrogation and reimbursement rights to recover from the tortfeasor(s) or from any settlement, judgment, or other recovery obtained by the Plaintiff / Debtor, Rochelle Alexander. I have attached a copy of the relevant plan language.

The filing of a bankruptcy petition creates an estate of the debtor. Under 11 U.S.C. §541, this estate consists of ". . . all legal and equitable interests of the debtor in property as of the commencement of the case . . ." The issue is what are the debtor's legal and equitable interests in property. Congress gave some guidance as to its intent in enacting §541 by stating "Section 541 will not apply in those instances where property which ostensibly belongs to the debtor is in reality, held by the debtor in trust for another . . ." H.R. Rep. No. 595, 95th Cong., 1st Sess., 367-8 (1977); S. Rep. No. 989, 95th Cong., 2d Sess., 82-3 (1978) reprinted in 1978 U.S. Code Cong. & Admin. News 5787.

Since Congress enacted §541, a number of cases from other jurisdictions have interpreted the effect of a health insurance subrogation or reimbursement claim in relation to a bankruptcy estate. In the case of *In the Matter of Donald Yakel*, 97 B.R. 580 (D. Ariz. 1989), the U.S. District Court for the District of Arizona cited the above statement of Congressional intent in concluding that a health plan (the Arizona Health Care Cost Containment System) had a right of recovery against funds recovered by the debtor from the tortfeasor. The Court reasoned that the portion of the tort settlement representing the medical expenses paid by the health plan never became part of the debtor's bankruptcy estate.

In the case of *In Re: Bonnie Squyres*, 172 B.R. 592 (Bkrtcy. C.D. Ill. 1994), the Bankruptcy Court for the Central District of Illinois cited *Yakel* with approval in determining that an automobile insurer had a valid interest in its insured's tort settlement that was superior to the insured's/debtor's general creditors. In *Squyres*, the Court indicated that in the presence of a valid contractual subrogation clause, an automobile insurer which paid medical expenses on behalf of its injured insured had a right to recover it payments from the tort settlement before the settlement proceeds became part of the bankruptcy estate. Citing *Yakel* and *Squyres*, the United States Bankruptcy Court for the District of Idaho, in an unpublished opinion, reached the same conclusion regarding the exclusion of a subrogation interest from the estate of a debtor. *In re Hiatt*, Case No. 97-02906, Advisory No. 99-6318 (D. Idaho 2000).

In another case, *In re: Donald DuBose and Carrie L. DuBose*, 174 B.R. 260 (Bankr. N.D. Oh. 1994), a U.S. Bankruptcy Court again ruled that the subrogation interest of an insurer providing health benefits to a tort victim had a claim to the tort settlement proceeds outside of the bankruptcy venue. In *DuBose*, the health insurer paid benefits for accident-related treatment and recovered those benefits from the liability insurer for the tortfeasor. The bankruptcy trustee tried to recover the money from the health insurer as an invalid postpetition transfer of the bankruptcy estate's assets. In granting summary judgment on the question in favor of the health insurer, the Bankruptcy Court held that because there was a valid contractual right of subrogation in favor of the health insurer, a separate cause of action existed between the health insurer and the tortfeasor. Therefore, the debtors had no interest in the funds transferred from the liability carrier to the health insurer.

A United States District Court in Virginia considered this same issue in the case of *In Re: Tina L Carpenter*, 252 B.R. 905 (E.D. Va. 2000). In *Carpenter*, the District Court affirmed the Bankruptcy Court's finding of an equitable lien in favor of the insured's health plan as against the tort settlement recovered by the insured. Here again, the Court found the existence of a valid, contractual subrogation claim in favor of the health plan (in this case a self-funded, ERISA-qualified plan) with a resulting secured, equitable lien against the proceeds of the tort settlement. An important point in the Court's decision seemed to be the insured's written acknowledgement of the plan's subrogation rights following the accident. The Court went on to find that the lien was a secured lien and was not subject to an exemption in favor of the debtor under the Virginia scheme of exemptions allowable in bankruptcy cases. This case was affirmed by the U.S. Court of Appeals for the Fourth Circuit in an unpublished opinion. *In Re: Tina L. Carpenter*, 36 Fed. Appx. 80 (4th Cir. 2002).

The United States Bankruptcy Court for the District of Connecticut also addressed this issue in the matter of *In Re: DeLucia*, 261 B.R. 561 (Bankr. Conn. 2001). Citing, among others, the *DuBose* case referenced above, the Court indicated that an asset in which there is a valid pre-petition subrogation interest is not property of the bankruptcy estate, at least to the extent of that subrogation interest. In

*DeLucia*, the court did not find for the health plan as it could not find that a valid, enforceable subrogation right existed. Even if that right did exist, the Court said such interest was inferior to the insured's/debtor's right to be made whole from the tort settlement. However, it is clear from the Court's language that a carefully worded subrogation provision in the health plan language would have been sufficient to remove the tort settlement from inclusion within the bankruptcy estate. Unlike *DeLucia*, carefully worded subrogation and reimbursement provisions are present in the language for the plan at issue in this matter.

Finally, the timing of a settlement as it relates to the filing of a bankruptcy petition can also impact whether funds belong in a bankruptcy estate. The U.S. Court of Appeals for the 6th Circuit has ruled that a health insurer that paid medical expenses for its insured before he filed a Chapter 7 bankruptcy petition had an interest in the proceeds of any settlement the insured made with the tortfeasor as such settlement money, up to the amount paid by the health insurer, was not the "property of the estate." *In re Bergman*, 467 F.3d 536 (6th Cir. 2006). *See also In re Cupp*, 383 B.R. 84 (E. Tenn. 2008). In 2008, the United States Bankruptcy Court for the District of South Dakota ruled that the bankruptcy estate's interest in settlement funds from a personal injury case was limited by the subrogation interest of the debtor's health plan. *In re McGreevy*, 388 B.R. 917 (D.S.D 2008).

Based on the rationale of these cases, we believe our client has a lien against any proceeds of medical negligence settlement, judgment, or other recovery the Debtor / Plaintiff obtains, before such proceeds would become general assets of the estate. Should you have any questions, please feel free to contact me. Otherwise, please continue to work with Brandon Flener, who can be reached at 502-814-2089, to resolve this matter. Thank you for your anticipated cooperation.

Sincerely,

*L. Taylor Smith*
L. Taylor Smith
Associate General Counsel to
The Rawlings Company
PH: 502-561-0741
FAX: 502-565-1579
LTS@rawlingsandassociates.com

# About Uniform Medical Plan Classic

Uniform Medical Plan Classic (UMP Classic) is a self-insured health plan offered through the Washington State Health Care Authority's Public Employees Benefits Board (PEBB) Program and administered by Regence BlueShield and Washington State Rx Services. All prescription drugs, services, or other benefit changes may require approval by the PEB Board at the time of procurement of benefits for the next calendar year.

UMP Classic is available only to people eligible for coverage through the PEBB Program, including employees and retirees of state government and higher-education institutions, school district retirees, and employees of certain local governments and school districts that participate in the PEBB Program, as well as their eligible dependents.

This plan is designed to keep you and your family healthy, as well as provide benefits in case of injury or illness. Please review this booklet carefully so you can get the most from your health care benefits.

UMP Classic is a "non-grandfathered health plan" under the Patient Protection and Affordable Care Act (PPACA).

## Online services

You can access plan information online at the UMP website, the Health Care Authority (HCA) website, and the Regence website.

Visit the UMP website at **www.hca.wa.gov/ump** to:
- Review complaints and appeals procedures.
- Access UMP medical policies.
- Find a preferred provider.
- Find a network pharmacy.
- Find out what your prescription will cost.
- Order prescription refills through your mail-order pharmacy account.
- Download or print documents and forms.
- Find your certificate of coverage.
- Access wellness tools.
- Access the Summary of Benefits and Coverage (SBC) and Uniform Glossary of Terms (UGT).

Visit the Health Care Authority website at **www.hca.wa.gov** to:
- Learn more about the Health Technology Clinical Committee.
- Find health technology reviews.
- Compare medical plans.
- Change your address.

19-01326-FPC7     Doc 35     Filed 02/14/20     Entered 02/14/20 14:19:48     Pg 14 of 22

# When another party is responsible for injury or illness

You may receive a letter from the plan asking if your injury or illness was the result of an accident, or might be someone else's responsibility. To ensure timely payment of claims, it is important that you respond as directed in the letter, even if the answer is no. If you don't, coverage may be denied. You may call Customer Service at 1-888-849-3681 if you have questions.

## What are my and the plan's legal rights and responsibilities?

Coverage under the plan is not provided for medical, dental, or vision expenses you incur for treatment of an injury or illness if the costs associated with the injury or illness may be covered by another first party insurance or may be recoverable from any of the following:

- A third party; or
- Any other source, including no fault automobile medical payments ("Med-Pay"), no fault automobile personal injury protection ("PIP"), homeowner's no-fault coverage, commercial premises no-fault medical coverage, sports policies including excess or similar contract or insurance, when the contract or insurance is either issued to, or makes benefits available to you, whether or not you make a claim under such coverage; or
- Services or supplies for work-related injury or illness, even when the service or supply is not a covered workers' compensation benefit under the workers' compensation plan.

**ALERT!** You must respond to any communication sent to you about other sources of benefits, or claims may be denied.

However, after expiration or exhaustion of the above no fault benefits, if you also have a potential right of recovery for illnesses or injuries from a third party who may have legal responsibility or from any other source, benefits may be advanced by the plan pending the resolution of a claim to the right of recovery if all the following conditions apply:

- By accepting or claiming benefits, you agree that the plan is entitled to reimbursement of the full amount of benefits paid out of any settlement or recovery from any source to the extent that the settlement or recovery exceeds full compensation to you for the injury or illness that you sustained. This includes any arbitration award, judgment, settlement, disputed claim settlement, underinsured or uninsured motorist payment or any other recovery related to the injury or illness for which benefits under the plan have been provided.
- The plan may choose to recover expenses through subrogation to the extent that the settlement or recovery exceeds full compensation to you for the injury or illness that you sustained. The plan is authorized, but not obligated, to recover any benefits to the extent that

19-01326-FPC7    Doc 35    Filed 02/14/20    Entered 02/14/20 14:19:48    Pg 15 of 22

they were paid under the plan directly from any party liable to you, upon mailing of a written notice to the potential payer, to you or to your representative.

- The plan's rights apply without regard to the source of payment for medical expenses, whether from the proceeds of any settlement, arbitration, award, or judgment; or other characterization of the recovery by the claimant or any third party or the recovery source. The plan is entitled to reimbursement from the first dollars received from any recovery to the extent that the settlement or recovery exceeds full compensation to you for the injury or illness that you sustained. This applies regardless of whether:
  - The third party or third party's insurer admits liability;
  - The health care expenses are itemized or expressly excluded in the recovery; or
  - The recovery includes any amount (in whole or in part) for services, supplies, or accommodations covered under the plan.
- You may be required to sign and deliver all legal papers and take any other actions requested to secure the plan's rights (including an assignment of rights to pursue your claim if you fail to pursue your claim of recovery from the third party or other source). If you are asked to sign a trust/reimbursement agreement or other document to reimburse the plan from the proceeds of any recovery, you will be required to do so as a condition to advancement of any benefits. If you or your agent or attorney fail to comply during the course of the case, we may request refunds from the providers or offset future benefits.
- You must agree that nothing will be done to prejudice the plan's rights and that you will cooperate fully with the plan, including signing any documents within the required time and providing prompt notice of any settlement or other recovery. You must notify the plan of any facts that may impact the right to reimbursement or subrogation, including, but not necessarily limited to, the following:
  - The filing of a lawsuit;
  - The making of a claim against any third party;
  - Scheduling of settlement negotiations in accordance with the plan (including, but not necessarily limited to, a minimum of 21 days advance notice of the date, time, location and participants to be involved in any settlement conferences or mediations); or
  - Intent of a third party to make payment of any kind to your benefit or on your behalf and that in any manner relates to the injury or illness that gives rise to the plan's right of reimbursement or subrogation (notification is required a minimum of five business days before the settlement).
- You and your agent or attorney must agree to keep segregated in its own account any recovery or payment of any kind to your benefit that in any manner relates to the injury or illness giving rise to the plan's right of reimbursement or subrogation, until the plan's right is satisfied or released.
- In the event you or your agent or attorney fails to comply with any of these conditions, any such benefits advanced for any illness or injury may be recovered through legal action to the extent that the settlement or recovery exceeds full compensation to you for the injury or illness that you sustained.
- Any benefits provided or advanced under the plan are provided solely to assist you. By paying such benefits, the plan is not waiving any right to reimbursement or subrogation.

19-01326-FPC7    Doc 35    Filed 02/14/20    Entered 02/14/20 14:19:48    Pg 16 of 22

# Services covered by other insurance

The plan does not cover services that are covered by other insurance, including but not limited to no fault automobile medical payments ("Med-Pay"), no fault automobile personal injury protection ("PIP"), homeowner's no fault coverage, commercial premises no fault medical coverage, sports policies including excess, underinsured or uninsured motorist coverage or similar contract or insurance. You are responsible for any cost-sharing required under the other coverage as allowed by state law. Once you have exhausted benefits (e.g., reached the maximum medical expenses amount of the other insurance policy(-ies), or services are no longer injury-related), the plan will cover services according to this certificate of coverage.

# Motor vehicle coverage

If you are involved in a motor vehicle accident, whether as a driver, passenger, pedestrian, or other capacity, you may have rights under multiple motor vehicle insurance no fault coverages and also against a third party who may be responsible for the accident. In that case, this right of reimbursement and subrogation provision still applies.

# Fees and expenses

You may incur attorney's fees and costs in connection with obtaining a recovery. We may pay a proportional share of such attorney's fees and costs incurred by you at the time of any settlement or recovery to otherwise reduce the amount of reimbursement paid to the plan to less than the full amount of benefits paid by the plan.

# Future medical expenses

Benefits for otherwise covered services may be excluded as follows:

- When you have received a recovery from another source relating to an illness or injury for services for which we normally would provide benefits. The amount of any exclusions under this provision, however, will not exceed the amount of your recovery.
- Until the total amount excluded under this subrogation provision equals the third-party recovery.

19-01326-FPC7    Doc 35    Filed 02/14/20    Entered 02/14/20 14:19:48    Pg 17 of 22

# EXHIBIT F

EXHIBIT F

Post Office Box 2000
LaGrange, Kentucky 40031-2000

One Eden Parkway
LaGrange, Kentucky 40031-8100

October 25, 2019

Marcia Meade
Dawson & Meade, P.S.
1304 West Dean St
Spokane, WA 99201

Re:     Our Client:            Uniform Medical Group
        Member/Patient:        Michael Alexander/Rochelle Alexander
        Date of Injury:        04/18/2014
        Our Reference No.:     87229480
        Your Client:           Rochelle Alexander

### <u>UPDATE OF LIEN AMOUNT</u>

Dear Ms. Meade:

 We previously placed your office on notice of our client's claim. The amount of our client's claim is now **$682,763.84**. As you are aware, the amount of the claim **may increase** if additional health benefits are paid. Therefore, please contact me prior to settlement to obtain the final amount.

 *Please refer to copies of the Explanation of Benefits mailed to the patient or additionally they can be found on www.regence.com for complete patient balances. Patient balances may include, claims processed without payment i.e., claims that have accumulated to deductible, claims paid by other insurance carriers, claims denied, or non-contracted provider balances. Additional injury related claims received for processing after settlement will be reviewed in accordance with the member's contract.*

 We are also requesting an update on this claim. Please provide the current status. You may fax your response to the number listed below.

 Sincerely,

Brandon L. Flener | Subrogation Recovery Analyst
PH: 502-814-2089 | FAX: 502-440-1046
BLF1@rawlingscompany.com

Comments:_____

**Healthcare information is personal and sensitive information, and you, the recipient, are obligated to maintain it in a safe, secure and confidential manner. Disclosure of this information without additional patient consent or as permitted by law is prohibited.**

# EXHIBIT G

EXHIBIT G

# MUNDING, P.S.
## ATTORNEY AT LAW

9425 N Nevada St., Ste 212
Spokane, WA 99218
(509) 624-6464
john@mundinglaw.com

**John D. Munding\***
**\*Admitted Washington, California & Idaho**

October 23, 2019

Dan O'Rourke
Southwell O'Rourke
421 W Riverside Ave, Ste 960
Spokane, WA 99201

Sent via: <u>Email Only</u>

      **RE:   In Re: Michael & Rochelle & Alexander**
             **Case No. 19-01326-FPC7**

             **Your Client: Marcia M. Meade**
                        **Edward A. Dawson & Marcia A. Meade**
                        **Case No. 18-01857-FPC11**

Dear Mr. O'Rourke:

I am the Chapter 7 Trustee appointed to administer the Chapter 7 Bankruptcy Estate of Michael and Rochelle Alexander, Case No. 19-01326-FPC7. One of the assets of the Bankruptcy Estate of Alexander is a medical malpractice case identified as Alexander vs. PH&S, Hansen et al, Spokane County Superior Court, Case No.17-02-01352-2. Your client, Ms. Meade was prior co-counsel for the Plaintiffs. Although I greatly appreciate the information previously provided by Ms. Meade with respect to the claims and pending litigation, the bankruptcy estate has made the decision not to employ Ms. Meade. Instead, Attorney Mark Vovos has been employed as special litigation counsel and will be representing the bankruptcy estate's interests. (Order, ECF No. 24).

Attached is a copy of a letter recently sent by Ms. Meade to Attorney Robert Sestero and Mr. Sestero's response. Please have Ms. Meade forward any correspondence or

- Page 1

information received from the State of Washington, Rawlings Company, or Regency Blue Cross directly to my office as soon as possible.

In addition, it is respectfully requested that Ms. Meade not have any direct contact with defense counsel, the mediator, or others involved in the medical malpractice claim litigation. Ms. Meade is also requested not to attend the upcoming mediation. The Chapter 7 estate will address her proof of claim through the claims objection process.

Thank you for your cooperation in this regard.

Very truly yours,

MUNDING, P.S.

JOHN D. MUNDING

cc: Mark Vovos